It is well settled that a judgment for future advances is good not only against the debtor, but also against subsequent incumbrances, at least up to the time when a subsequent judgment or mortgage should intervene. But when such subsequent incumbrance may be said to intervene is not so well settled; whether at the time it is put upon the record or at the time the prior incumbrancer has actual notice of it.
The supreme court, in deciding this case, held that it ought to be only from the time of actual notice, because the docketing of a judgment or recording a mortgage was under the statute notice only to subsequent, and not to prior incumbrancers. In this I am inclined to think the court were right, for as Chancellor Kent remarked in James v. Johnson. (6 John. Ch. R. 429,) it is only when the rights of third persons are prejudiced by want of notice c. that the extension of the security is prevented.
But this is not, as the court below supposed, decisive of this case. There is a principle also involved which is well stated by the same learned jurist. A mortgage is always good to secure future loans when there is no intervening equity, but it is necessary that the agreement, as contained in the record of the lien, should however give all the requisite information as to the extent and certainty of the contract, so that a junior creditor may, by inspection of the record, and by common prudence and ordinary diligence, ascertain the extent of the incumbrance. This is requisite to insure good faith and prevent error and imposition in dealing. (4 Kent's Com. 175, and the cases therecited.)
The importance and necessity of such a principle is manifest in this case. The judgment under which defendant claims was to Williams alone, and on its face purported to be for a debt of $20,000 owing to W. alone, on the 22d April, 1835. There was nothing in or about the judgment that was calculated to convey any other idea, and no junior creditor could by inspection of the *Page 167 
record or by common prudence or ordinary diligence ascertain that it was any thing else. The judgment was docketed on the 14th October, 1835.
Now from the testimony in the case it does not appear what was due W. at the date of the bond and warrant of attorney. He testified that it was impossible for him to say whether there was any thing due him on that day, but he supposed there was due his house about $20,000, or that they were under implications for that amount of acceptances; but he adds that he has no doubt that his house received, before the judgment was docketed, as much money as the drafts and acceptances then outstanding. He is equally uncertain as to what was the state of the accounts on the 14th October, 1835, when the judgment was docketed. And then as to the time when the plaintiffs' mortgage was recorded, viz. 16th October, 1837, he says that Brown Starkweather were not indebted to him individually; that after that date his firm did receive from them funds and negotiable paper, and that subsequent to the 17th November, 1837, his house did receive from them a larger amount of money than was due them at that time.
Now why should a judgment thus satisfied be held to be good against an incumbrance which then attached? Not from any thing which appeared upon the record, not from any thing which could be ascertained by inspecting the record or by common prudence or ordinary diligence, but because of a secret trust and understanding between the parties to the judgment that it should be kept alive to give to debts afterwards to be contracted a preference over a debt already a valid incumbrance.
This never would do. It would be a violation of all principle and good faith, and lead to great error and imposition.
The decree ought to be reversed.
Decrees in the courts below reversed, and decree ordered in accordance with the prayer of the complainants' bill, with costs in the courts below. *Page 168